IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| In Re: | : | Case No. 24-bk-01277-MJC |
|---|---|---|
| MELISSA MARTIN, | : | |
| | : | Chapter 13 |
| Debtor | : | |

**FREEDOM MORTGAGE CORPORATION'S OBJECTION TO DEBTOR'S THIRD AMENDMENT TO SCHEDULE A/B**

Creditor, Freedom Mortgage Corporation ("Freedom"), by and through counsel, submits the following objection to Debtor's third amendment to Schedule A/B ("Amendment Three"):

**I. Factual Background**

1. On May 23, 2024, Melissa Martin ("Debtor") filed a Chapter 13 Voluntary Petition and Chapter 13 Plan.

2. On July 29, 2024, Freedom filed proof of claim no. 15, evidencing its status as a secured creditor by way of a recorded mortgage on the Debtor's real property, in the amount of $88,044.68, which included pre-petition arrears in the amount of $17,633.56.[1]

3. On October 21, 2024, Freedom filed a Notice of Postpetition Mortgage Fees, Expenses, and Charges ("Notice") evidencing attorney's fees and bankruptcy fees incurred after the Debtor's petition was filed. POC No. 15.

---

[1] On December 30, 2024, Freedom amended proof of claim no. 15 to $88,044.56, which included a reduction in pre-petition arrears to the amount of $15,858.38.

1

4. On January 30, 2025, Debtor filed, under penalty of perjury, the first amendment to Schedule A/B ("Amendment One"), which disclosed a claim against Freedom for alleged "violations of RESPA, TILA, and Regulation Z. Debtor could recover statutory damages of up to $6,000.00, plus costs and attorney's fees." Dkt. 32.

5. On February 14, 2025, Debtor filed Motion to Order Trustee to Abandon Property ("Motion to Abandon") regarding the claims listed in Amendment One. The Motion expressly stated the Trustee should abandon the claims because debtor "does not assert that she has any claim for any actual damages, and instead intends to seek only statutory damages." *See* Dkt. 33.

6. Based on Amendment One and the Motion to Abandon, on March 6, 2025, this Court entered Order Granting Motion to Order Trustee to Abandon Property ("Order"). Dkt. 34.

7. On June 16, 2025, Debtor filed the second amendment to Schedule A/B ("Amendment Two"), adding "claims arising after previous amendment" against Freedom "for violations of RESPA, TILA, and Regulation Z. Debtor could recover statutory damages of up to $6,000, plus costs and attorney's fees." Dkt. 38.

8. On or about June 20, 2025, Debtor filed a complaint in civil action asserting claims against Freedom in the Court of Common Pleas of Lackawanna County, Pennsylvania, for the alleged violations of RESPA, TILA, and Regulation Z ("Companion Case").[2] Despite the prior representations to this Court, the Debtor requested a judgment of *actual damages* in addition to statutory damages, costs, and attorney's fees.

9. On July 29, 2025, after Freedom moved to dismiss the Companion Case based on Debtor's representation in the Bankruptcy she had no actual damages, Debtor tried to alter the

---

[2] The Companion Case was removed to federal district court for the Middle District of Pennsylvania and later remanded back to the Court of Common Pleas.

2

Case 5:24-bk-01277-MJC   Doc 54   Filed 10/02/25   Entered 10/02/25 13:26:53   Desc
Main Document    Page 2 of 9

Bankruptcy record by fielding a Motion to Confirm Property is Abandoned ("Motion to Confirm"), asserting the claims filed against Freedom do contain actual damages, but "the estimated value of $6,000 for the claim is still correct. The most that the debtor could hope to recover in this case is the statutory award of $6,000.00. Any additional amount recovered for attorney's fees—whether defensive or prevailing litigant—would be expected to be paid to the attorney and would not generate additional value for the bankruptcy estate." Dkt. 43.

10. On August 15, 2025, Freedom filed its Objection to Debtor's Motion to Confirm Property is Abandoned ("Objection") arguing Debtor was attempting to change the representations she made to this Court as a litigation strategy in the Companion Case. Dkt. 47.

11. On September 4, 2025, at 10:00 AM, this Court held a hearing regarding Freedom's Objection which was attended by counsel for both parties. Dkt. 52.

12. The Court denied Debtor's Motion to Confirm.

13. On September 4, 2025, during the aforementioned hearing on Debtor's Motion to Confirm, Debtor filed new schedules ("Amendment Three"), again attempting to change the representations she made to this Court as a litigation strategy in the Companion Case. She states in Amendment Three, "Debtor could recover statutory damages of up to $6,000.00, *actual damages*, costs and attorney's fees" (emphasis added). Dkt. 51.

14. Freedom objects to Debtor's Amendment Three as it prejudices the creditors and is an act in bad faith. Debtor represented on more than one occasion she suffered no actual damage and her claim was valued at $6,000. However, after realizing that her failure to suffer actual damage meant she did not have a viable claim against Freedom, she is attempting to change her representations to this Court and the creditors, while the underlying value of the claim doesn't change. Essentially, her representations to this Court and the creditors is whatever suits her

3

litigation needs, not the actual truth, which is required as these are signed under penalty of perjury. Debtor should not be permitted to abuse the bankruptcy process to satisfy her desired litigation strategy.

**II. Objections to Amendment Three**

15. The averments of the foregoing paragraphs are hereby incorporated by reference.

16. For the reasons set forth below, Freedom objects to Amendment Three.

**A. Amendment Three is Prejudicial to the Chapter 13 Trustee, Freedom, and Other Creditors**

17. Under Fed. R. Bankr. P. 1009(a), debtors may amend schedules as a matter of course while a case remains open. *See, e.g., In re Cudeyro*, 213 B.R. 910, 918 (Bankr. E.D. Pa. 1997); *In re Knapp*, 283 B.R. 819, 822 (Bankr. W.D. Pa. 2002).

18. Due to this liberal amendment standard, a party objecting to an amendment must demonstrate by a sufficiently clear showing that (i) bad faith or (ii) prejudice to the trustee or creditors warrant denial of the proposed amended schedule. *In re Cudeyro,* 213 B.R. at 918.

19. Prejudice has been found in instances where "the trustee may be understood to have acted in reliance upon the debtor's initial schedules, and having taken such actions may be prejudiced if the amendments were allowed." *Id.* at 919 (internal citations omitted).

20. Similarly, prejudice has been found where debtors attempt to amend exemptions after seeking relief related to the original exemption. *In re St. Hill*, No. 04-30919, 2005 Bankr. LEXIS 3326, at *33 (Bankr. E.D. Pa. Sept. 2, 2005) (citing *Matter of Eldridge*, 15 B.R. 594, 595 (Bankr. S.D.N.Y 1981)). In other instances, amendments have been denied for being unfairly prejudicial to creditors in cases where a debtor attempts to amend exemptions after distribution of assets, based on the claimed exemptions, has already been made. *See In re Cudeyro,* 213 B.R. at 919 (citing *In re Shaffer*, 92 B.R. 632, 634 (Bankr. E.D.Pa. 1988)).

21. Amendment Three is nothing more than a bad faith litigation strategy to save her legally deficient claim in the Companion Case. The value of the claim hasn't changed. She hasn't alleged changed facts. She just now understands that the facts (based on her representation under oath that she did not suffer actual damages) means she doesn't have a viable claim, and she apparently is willing to state whatever is necessary under oath, true or not, to try to avoid the natural result of the facts and her representations this Court relied upon. Dkt. 32; Dkt. 33; Dkt. 34; Dkt. 38. Simply, bankruptcy is not a litigation strategy. It is about truthful disclosure and being bound by those representations and disclosures. Debtor should not be allowed to abuse this sacred process.

22. Furthermore, the amendment is prejudicial to the creditors and Trustee. The amendment is facially misleading to any party unaware of the circular reasoning laid out in the Motion to Confirm. Dkt. 43. This risks confusion to Debtor's creditors about the actual value and scope of the claim. Amendment Three implies a substantive expansion of recoverable damages; however, the amendment contains no factual development and no changed valuation.

23. Moreover, the purpose of Amendment Three is to better Debtor's position in the Companion Case. Actual damages are a necessary prerequisite to state a cognizable claim under RESPA. *Hutchinson v. Delaware Sav. Bank FSB*, 410 F. Supp. 2d 374, 383 (D.N.J. 2006). However, proving actual damages would appear to be problematic considering the Debtor stated she "does not assert that she has a claim for any *actual* damages," in her Motion to Abandon. Dkt. 33. This could possibly be argued away as a mistake if it occurred once, but the Debtor stated there were no actual damages in *three separate filings* to this Court *prior* to the complaint initiating the Companion Case. She did not seek to change that representation until she realized the facts mean she did not have a viable RESPA claim against Freedom. Rather than being a mistake, this is an

5

admission the Debtor suffered no actual damages, and the Debtor is now attempting to amend the record as a litigation strategy in the Companion Case.

    B. **Debtor should be Estopped from Taking a Contradictory Legal Position in Amendment Three**

24. Judicial estoppel prevents a party from taking a position inconsistent with its previous position in order to gain an unfair advantage. Factors that inform the decision whether to apply judicial estoppel include (i) a party's later position is clearly inconsistent with its earlier position; (ii) the party's former position has been adopted in some way by a court in the earlier proceeding, so that acceptance of the inconsistent position would create the perception that either the first or second court was misled; and (iii) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel. *See United States v. Pelullo*, 399 F.3d 197, 222-223 (3rd Cir. 2005).

25. The purpose of judicial estoppel is "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Thomas v. JP Morgan Chase, N.A.*, No. 11-cv-3656, 2012 U.S. Dist. LEXIS 96131, at *17 (E.D.N.Y. July 11, 2012) (internal citations omitted).

26. Judicial estoppel is applicable in this instance because (i) the Debtor's original assertion of no actual damages is clearly inconsistent with the new assertion that there are actual damages; (ii) the Debtor's original position was adopted by this Court when it entered the Order; and (iii) the Debtor's change in position is for the purpose of obtaining an advantage in the Companion Case.

27. Moreover, judicial estoppel is appropriate here because Amendment Three lacks relevance to the bankruptcy case and will be used tactically in the Companion Case. The amendment does not provide transparency to the trustee or the Debtor's creditors. It does not

6

benefit or affect the Debtor's bankruptcy case. Its only purpose is to allow for a fee-shifting mechanism for the benefit of the Debtor and Debtor's counsel Dkt. 43.

28. Freedom did not object to the Debtor's Motion to Abandon and has relied on those representations in the Companion Case litigating the Debtor's claims. Permitting Amendment Three would permit the Debtor and Debtor's counsel to leverage this Court for personal gain. Amendment Three serves no bankruptcy purpose; Debtor's counsel has maintained the position that only statutory damages up to $6,000.00 are recoverable by the Debtor and that she has no other recoverable damages. Dkt. 32; Dkt. 33; Dkt. 38; Dkt. 43. When Debtor's counsel realized this admission was fatal to the claim in the Companion Case, Debtor and Counsel sought to change the representations. The only apparent purpose for Amendment Three is for use as a litigation tactic to recover fees, which is not possible without actual damages. But if attorney's fees are retroactively considered actual damages then *ipso facto* there are actual damages the fees are now recoverable. Dkt. 43.

29. This tactic is particularly misleading because the only difference in the language between Amendment Two and Amendment Three is the addition of the words "actual damages." Anyone that reads only the series of amendments would be hard pressed to conclude other than Amendment Three adds additional claims for actual damages. The amendment is misleading, inconsistent, and should not be allowed.

### III. Conclusion

30. Freedom objects to the additional language contained in Amendment Three for being contradictory to the Debtor's previous positions, inconsistent with the representations contained in the Order, and for asserting a legal position that is inconsistent with Third Circuit precedent regarding actual damages.

7

Respectfully submitted,

/s/ Sarah S. Mattingly
Sarah S. Mattingly, Esq. (KBA #94257)
Dinsmore & Shohl, LLP
101 South Fifth Street, Suite 2500
Louisville, Kentucky 40202
Phone: (502) 540-2300
Fax: (502) 585-2207
E-mail: sarah.mattingly@dinsmore.com
*Counsel for Freedom Mortgage Corporation*

# CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing **FREEDOM MORTGAGE CORPORATION'S OBJECTION TO DEBTOR'S THIRD AMENDMENT TO SCHEDULE A/B** was served via E-Mail and ECF, on this 2nd day of October 2025 upon the following.

Carlo Sabatini
carlo@bankruptcypa.com
*Counsel for Debtor*

Jack Zaharopoulos
ecf_pahu_alt@trustee13.com
*Trustee*

/s/Sarah S. Mattingly
Sarah S. Mattingly, Esq.

9