IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: Melissa A Martin, | Chapter 13 |
| Debtor | Case No. 5:24-bk-01277-MJC |
| Freedom Mortgage Corp., | |
| Objector | |
| v. | |
| Melissa Martin, | |
| Respondent | |

## DEBTOR'S REPLY BRIEF REGARDING FREEDOM MORTGAGE CORPORATION'S OBJECTION TO DEBTOR'S THIRD AMENDMENT TO SCHEDULE A/B

**A. There has been only one amendment that changes a prior representation.**

It appears that Freedom has given the Court the impression that there have been multiple schedule amendments related to Debtor's claims against Freedom, each of which changes prior representations.

> THE COURT: The fact that Mr. Sabatini is trying to amend the schedules again, which is problematic. I mean, you brought that up. I think Mr. Sabatini has been in front of me practicing here for a long time. Changing amendments or, excuse me, changing the schedules several times is problematic. It doesn't usually happen, I guess, is what I should say.

Tr. 4:3- 4:8. However, Docket Entry 51 is the *only* time that Debtor has

1

changed a prior representation regarding claims against Freedom. Here is a list of all of the docket entries related to those claims:

| | | |
|---|---|---|
| 1/30/2025 | Dkt. Entry 32 | **First claim disclosed.** (This entry is the first amendment to Schedule A/B. As a post-petition claim, the claim did not exist when the original Schedule A/B was filed with the petition. Thus, the amendment adds a new claim that could not have been included on the previous Schedule A/B. This is the claim that is the subject of the state court litigation.) |
| 6/18/2025 | Dkt. Entry 38 | **Second claim disclosed.** (This entry specifically says that it is for "Additional claims arising after previous amendment filed to Dkt. Entry 32 on January 30, 2025. Thus, this amendment does not correct a prior entry. Rather, it discloses *new* claims that did not exist when the prior amendment was filed. Debtor has not yet filed a lawsuit on these claims.) |
| 9/4/2025 | Dkt. Entry 51 | **Amendment to second claim.** The amendment is explicit that it "is an amendment to the asset disclosed in Dkt. Entry 38." This amendment is the one at issue. As explained in Debtor's prior briefing, the sole change is to add "actual damages" to the description of the claim. |
| 12/12/2025 | Dkt. Entry 63 | **Third claim disclosed.** This amendment states that the debtor is disclosing additional claims against Freedom relating to a letter mailed on November 6, 2025 – i.e., after the date of the previous amendment. Debtor has not yet filed a lawsuit on this claim. |

2

Thus, the amendment at issue here is the only change to a prior representation. Each other amendment discloses a new claim that did not previously exist.

**B. Freedom's attacks against Debtor's counsel are baseless.**

Freedom's brief continues its strategy of trying to divert the Court's attention from its own culpable conduct by attacking Debtor and her counsel. Freedom claims that "Amendment Three is intentionally misleading" (Br. 4), Freedom characterizes the proceedings as "bad faith efforts. . . [and] an attempt to repaper the record" (Br. 8), and Freedom asserts that Debtor's counsel "continue[s] to run up litigation fees regardless of the actual merits of the claim." (Br. 3.) Because Freedom seeks to influence this Court's decision with false attacks on Debtor and her counsel, it is necessary to correct the record.

Debtor is a single mother of three children whose home was in foreclosure. To save the home, she filed this Chapter 13 case with a cure plan. She worked two full-time jobs to earn the money she needed to fund the plan. The mortgage loan is now current, and the plan is almost complete.[1]

---

[1] She has paid over 95% of the $26,981.34 base plan. The mortgage arrears having been cured, the trustee is now distributing plan funds to general unsecured creditors.

The mortgage naturally required Debtor to reimburse Freedom for certain amounts that it had paid its lawyer. However, the fees it claims are exorbitant. Freedom's attorney billed flat fees for tasks performed. But, the time spent on some work was so minimal that, when calculated based on duration, the work is estimated to cost over $4,000 an hour.[2] Such fees are unconscionable – particularly where they are charged to an unwilling party who is in such a financially vulnerable position.

The Debtor asked the mortgage company to provide the time records to demonstrate that the time spent by the attorney justified the fees charged. Debtor exercised rights provided by the Real Estate Settlement Procedures Act ("RESPA") that require the production of such information when a borrower mails the request to a specific address. Debtor also requested a payoff statement pursuant to the Truth in Lending Act ("TILA"). Separately,

---

[2] For example, the questioned fees include a charge of $400 for reviewing the plan on June 4, 2024. See Notice of Postpetition Mortgage Fees, Expenses, and Charges filed on October 21, 2024. The only plan filed as of June 4, 2024, was the original plan (Dkt. Entry 5), which is truly bare bones. The plan provides a payment schedule for plan funding, estimates the amount to be paid to Freedom to cure the arrears, identifies another claim as having $0 arrears, and contains three lines that deal with vesting in the § 9 Special Provisions section. The rest of the plan is unaltered form language that does not need to be read by a reviewing attorney who is familiar with the district's form plan. It is hard to envision that an attorney would spend more than one-tenth of an hour to review the plan. A charge of $400 for one-tenth of an hour of work is an effective hourly rate of $4,000 per hour.

Debtor requested this information informally through Freedom's bankruptcy counsel. Freedom did not timely provide the requested information.[3]

For such failures, RESPA and TILA allow a borrower to recover combined statutory damages of $6,000, actual damages, and attorney's fees. Yet Debtor did not immediately run out and institute suit. Instead, she advised Freedom of the liability and offered to refrain from pursuing the claim if Freedom would simply provide the requested information. (See Ex. H, p. 2, last paragraph.) Freedom did not.

As the amounts at issue were relatively small, and in an effort to resolve the matter quickly and without the unnecessary accrual of attorney's fees, Debtor then filed a small claims action under RESPA and TILA.

Freedom did not allow the litigation to be resolved so expeditiously. First, Freedom ignored the small claims action and allowed a judgment to be entered against it. It then appealed. It then "made a federal case out of it" by removing the case to federal court. A week later, it filed two motions: one seeking dismissal of the case, and the other asking Judge Mannion to refer the case to the bankruptcy court. Debtor, however, filed a remand motion explaining that the removal was untimely. Judge Mannion remanded, thus

---

[3] After the statutory deadline, Freedom produced a payoff statement. However, to this day, Freedom has still refused to provide any time records.

5

mooting the pending motions to dismiss and to refer the case to the bankruptcy court.

On remand, Freedom continues with its Stalingrad defense in the state court litigation ("the Companion Case"). In its still-pending preliminary objections, Freedom asserts that Debtor should be judicially estopped from pursuing actual damages in state court based on inconsistent statements regarding actual damages that were made in the bankruptcy court.

Of course, all of this litigation has occurred only because Freedom: (1) charged exorbitant attorney's fees, (2) ignored its statutory duties to respond to RESPA and TILA requests, (3) refused to provide the documentation to justify those fees when requested informally through its bankruptcy counsel, (4) spurned Debtor's offer to not pursue the RESPA/TILA claims if Freedom would provide the fee information, (5) refused to resolve in small claims court, and then (6) chose to implement a scorched earth defense.

Whose counsel "continue[s] to run up litigation fees regardless of the actual merits of the" claim or defense? Is it Debtor's? Or is it actually Freedom's?

6

C. **The Court should not disallow Debtor's amendment to the schedules.**

Debtor explained that the omission of "actual damages" from Schedule A/B was the result of counsel using language standard for FDCPA cases, not from an intent to deceive or gain advantage. Debtor explained that the language had previously been used in hundreds of cases and attached an exhibit with examples. Freedom responds in three ways.

First, Freedom says that "Even if a mistake, which the record does not support,[4] it was a representation made to and relied on by this Court, which binds Debtor." (Brief at 5.) Freedom does not explain how the Court relied on the mistake. Freedom does not pretend that the Court would have denied the motion to abandon if the motion had not disclaimed actual damages. To the contrary, with or without actual damages, there was no unexempt value, so there was every reason to abandon the claim. Presumably, that immateriality as to the erroneous representation informed the trustee's decision to concur with Debtor's subsequent motion to confirm the abandonment. If the initial motion would have been granted anyway, then there was no reliance.

---

[4] Note that Freedom's assertion here that the record "does not support" that there was a mistake is hard to reconcile with Freedom's admission two paragraphs later that "neglecting to include actual damages in prior amendments might be a mistake."

7

Nor does Freedom provide any authority for the novel proposition that an inaccurate schedule cannot be amended because it "binds Debtor." Instead, the rules state that a debtor may amend a schedule at any time. Fed. R. Bankr. P. 1009(a). In fact, a debtor has a duty to amend schedules once it learns of an inaccuracy. *In re Engel*, 246 B.R. 784, 794 (Bankr. M.D. Pa. 2000)(Thomas, J.)("[t]he obligation to file accurate schedules includes a continuing duty to correct errors in filed documents.") Additionally, a debtor is not permanently "bound" by inadvertent inaccuracies in original filings – especially where the Debtor amends the schedules to correct the inaccuracy.

> In considering both the debtor's original and amended schedules, I note that the former may constitute evidentiary admissions, while the latter may constitute judicial admissions. An evidentiary admission—statements in pleadings from another proceeding, superseded or withdrawn pleadings in the same proceeding, answers to interrogatories—may be controverted or explained by the party. Russell, *Bankruptcy Evidence Manual* § 801.22 (2004 ed.). A judicial admission on the other hand—admissions in pleadings in the proceeding, stipulations, and admissions pursuant to requests to admit—are binding and may not be controverted at trial.

*In re Corson*, 2004 WL 5865045, at *6 (Bankr. E.D. Pa. June 25, 2004). Thus, the *Corson* court held that where a schedule is amended, the original

information is not binding on the debtor, but the new information is.[5] The court then quoted with approval language indicating that amendments to fix mistakes should be credited: "where a secured debt is mistakenly scheduled as an unsecured obligation, it would exalt form over substance to refuse to consider a postpetition amendment to the schedules that properly classifies the indebtedness." *Id.* at \*8 (quoting *In re Hatzenbuehler*, 282 B.R. 828, 833 (Bankr.N.D.Tex.2002), internal quotation marks omitted). Thus, where a debtor amends schedules, he is not irretrievably bound to mistakes that had been contained in the original document.

Freedom's second argument is that the claim of mistake is "belied by language in" the motion to abandon property where Debtor disclaims any "claim for any *actual* damages." (*Id.* quoting, Doc 33, ¶ 4, italics in original.) However, at the hearing on November 4, 2025, Debtor's counsel explained to the Court that the language in the motion to abandon was also a mistake, one that, like the disclosure in the schedules themselves, stemmed from language originally drafted for FDCPA claims. See Tr. 17:6-17:19. Freedom ignores that

---

[5] Of course, that original information does not become a nullity. Rather, it may be an evidentiary admission that may be able to be used against the party, but which the party may controvert.

explanation and instead baldly declares that it "is not a drafting error." (Def. Br. at 5.)

Attached as Exhibits A – E are motions to abandon FDCPA claims that were filed in five cases.[6] Except for variations on the pronoun "she," each of the motions contains this exact sentence: "Debtor does not assert that she has a claim for any *actual* damages, and instead intends to seek a recovery of only statutory damages." The word "actual" is italicized in all five motions.

As the Court observed at the hearing, "[I]t's hard to say that it's a typo because someone put that in italics." (Tr. 16:9.) Of course, that observation is true. The mistake here was not a typo. When that word was italicized in the first motion to abandon, years ago, it was done so deliberately. And accurately. The mistake in this case was copying the already-italicized language from a motion to abandon an FDCPA claim without considering that the RESPA claim here does, in fact, include actual damages.

Freedom's third argument is that "the absence of actual damages is reaffirmed in Debtor's Motion to Confirm that Property has Been Abandoned."

---

[6] *In re Beckhorn*, 5:21-bk-00849-MJC Doc 34, ¶ 6, filed October 25, 2021;
*In re Cole*, 5:21-bk-01163-MJC Doc 32, ¶ 7, filed October 25, 2021;
*In re Badyrka*, 5:20-bk-03618-MJC Doc 58, ¶ 7, filed November 19, 2021;
*In re Strauss*, 5:21-bk-00995-MJC Doc 36, ¶ 5, filed January 13, 2022; and
*In re McHugh*, 5:22-bk-01870-MJC Doc 43, ¶ 3, filed August 11, 2023

(Brief at p. 5.) Freedom then cites a colloquy between Debtor's counsel and the Court in which counsel explained that "for this [matter]" – i.e., the lawsuit that counsel had filed for Debtor against Freedom – the fee is "a contingent hourly rate" and that "[t]he client will never write me a check **for this case.**" Why will the client never write a check? Because if counsel is paid fees for litigating the Companion Case, it will be with money received from Freedom. Those contingent fees incurred "for this case" are earned only if the case is successful.

The fees incurred for this case are different than the "actual damage" non-litigation fees for which Debtor is already liable, irrespective of the result in this case. Counsel did *not* say that Debtor is not responsible for those earlier attorney's fees. Again, the actual damage fees are for the time counsel spent on a second Request for Information, after Freedom ignored its responsibilities to respond to the first Request for Information. Thus, Debtor did not "reaffirm" an "absence of actual damages."

Debtor explained that the amendment "does not prejudice Freedom in any way and provides more accurate information regarding the claim." (Dkt. Entry 59, p. 4.) Freedom's response is to simply make blanket assertions of prejudice flowing from a misleading record. It does not directly address or

refute the specific assertion that Freedom suffers no legal prejudice from more accurate or complete asset disclosure.

Freedom claims that "This is a dispute over bad faith efforts to use the bankruptcy court for advantage in another venue." How does Debtor's conduct in the bankruptcy case seek to use the bankruptcy court for advantage in another venue? Debtor has no use in the Companion Case for the original or amended schedules. Nor does Debtor have any reason to mention the motion to abandon or the motion to confirm the abandonment. It is Freedom who is raising bankruptcy issues in the Companion Case, and who wishes to use the bankruptcy process to attempt to change the outcome of the state court proceeding by asserting a claim of judicial estoppel.[7] (Ex. F, Freedom's Brief in Support of Preliminary Objections at 8.)

---

[7] Note that "judicial estoppel is unwarranted unless the party *changed his or her position in bad faith* –i.e., with intent to play fast and loose with the court." *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 319 (3d Cir. 2003)(quoting *Montrose Medical Group Participating Savings Plan v. Bulger,* 243 F.3d 773, 779-780 (3rd Cir. 2001)(italics in original, quotation marks omitted). Here, Debtor has persuasively explained that the inconsistent positions are the result of a drafting error. Where Freedom has no contrary explanation, it is difficult to envision that Freedom will be able to (1) meet its burden to show bad faith in the first place, and then (2) convince the state court to exercise its discretion to apply the equitable remedy of judicial estoppel.

Finally, the amendment should be permitted because the claims described in the amendment have nothing to do with the Companion Case. The claims in the Companion Case arise from Freedom's failure to respond to correspondence sent in 2024. (See Complaint from Companion Case, Ex. G, ¶ 19-23.) Those claims were first disclosed on January 30, 2025 at Dkt. Entry 32. The Companion Case was filed on March 25, 2025.

Thereafter, *additional* claims against Freedom arose by June of 2025 as a result of Freedom's failure to respond to correspondence dated March 20, 2025. (That correspondence is attached as Exhibit H.) These new claims were then included in an amendment filed in June of 2025 to Dkt. Entry 38:

> ADD Additional claims arising after previous amendment filed to Dkt. Entry 32 on January 30, 2025: Claims against Freedom Mortgage Corporation and PS Bank for violations of RESPA, TILA, and Regulation Z. Debtor could recover statutory damages of up to $6,000.00, plus costs and attorney's fees.

Thus, Dkt. Entry 38 has nothing to do with the Companion Case. Then, Debtor amended Dkt. Entry 38 with a filing to Dkt. Entry 51:

> **AMEND: This is an amendment to the asset disclosed in Dkt. Entry 38:** Additional claims arising after previous amendment filed to Dkt. Entry 32 on January 30, 2025: Claims against Freedom Mortgage Corporation and PS Bank for violations of RESPA, TILA, and Regulation Z. Debtor could recover statutory damages of up to $6,000.00, <u>actual damages</u>, costs and attorney's fees.

Freedom objects to Dkt. Entry 51. In other words, Freedom objects to an amendment that relates to claims arising after the Companion Case, and which are not yet the subject of litigation in that case or in any other case. Freedom willfully[8] ignores this reality. Instead, Freedom pretends that "Amendment Three is about Debtor's pending litigation against Freedom in the Companion Case." Br. at p. 2. See also, Brief at p. 8 ("Amendment Three is Debtor's attempt to gain an advantage in the Companion Case.")

It is unclear why Freedom continues to press its objection when the amendment is unrelated to the Companion Case. Perhaps Freedom hopes for a win here that it can use to muddy the waters in the Companion Case? Freedom's counsel asserted that "state courts struggle to understand bankruptcy and those nuanced arguments." (Tr. 6:16-19.) A holding by this court sustaining the objection would certainly be trumpeted by Freedom in the state court as supportive of Freedom's position.

---

[8] Freedom cannot feign ignorance. Debtor explained at the hearing that the amendment that Freedom is objecting to is unrelated to the Companion Case. See, e.g., Tr. 9:15-9:18 ("Docket Entry 38 says add additional claims arising after previous amendment filed to Docket Entry 32 on January 30, 2025. Docket Entry 32 describes the claims that are the subject of the state court litigation."); Tr. 13:17 – 14:10 ("as it clearly says, are additional claims. These claims have nothing to do with the claims that are in the previous amendment, right? . . . **Even though I haven't done any litigation on this yet**, I need to amend this so that the docket is correct because if I realize that I've done something wrong, I should go out there and fix it.")

### D. Standing

Debtor's first brief explained that Freedom "is not entitled to receive any further payment in this proceeding." Doc. 58 at p. 3. Freedom does not disagree. Instead, Freedom asserts that it has standing based on other theories.

Freedom asserts that the amendment at issue "is about Debtor's pending litigation against Freedom in the Companion Case." Br. at 1-2. This assertion is problematic for two reasons. First, it is inaccurate. As explained in the prior section, the claims being amended are not the claims at issue in the Companion Case. Second, even if these claims *were* at issue in the Companion Case, Freedom's exposure in separate litigation does not create standing.

In *In re Zamora*, 2016 WL 617194 (Bankr. N.D. Cal. Feb. 16, 2016), a Chapter 7 case was reopened to allow the individual debtors to schedule a claim for wrongful foreclosure against a mortgagee, and to then ask the trustee to abandon the claim. The mortgagee objected to the abandonment and simultaneously offered to withdraw his claims and pay $15,000 to the bankruptcy estate. The trustee nevertheless pursued abandonment, believing that prosecuting the claim would be very difficult and that the $15,000 offered by the mortgagee would not be sufficient to generate a dividend for the creditors. The court approved the abandonment over the objection:

15

> Defendants sued by debtors in state court generally have no standing to appear in bankruptcy court to contest a bankruptcy trustee's intent to abandon the estate's right to pursue those defendants. Morris argues that he has standing to object to the abandonment because he is also a creditor, but there is no way his offer to pay $15,000.00 would result in a dividend on his claims. He is merely a defendant in [sic] state court proceeding seeking to buy his way out of the suit by an inconsequential payment to a bankuptcy trustee.

*Id.* at 1, citations omitted.

*Zamora* is exactly on point. Freedom's pecuniary exposure in the Companion Case does not give it standing to object here. Instead, Freedom "is merely a defendant in [a] state court proceeding seeking to [get] out of the suit by" using the bankruptcy court. *See also, In re Stephenson*, 415 B.R. 436, 441 (Bankr. D. Idaho 2009)(where debtor sought to pay the Chapter 7 trustee enough to pay all allowed claims in full, and the trustee then sought to abandon a claim against a defendant in state court litigation, that defendant's "interest in avoiding future litigation with the debtor and limiting its potential liability or defraying the costs of such litigation" was insufficient cause to authorize intervention under Fed. R. Bankr. P. 2018(a)).

Of course, *Zamora* also disposes of Freedom's separate argument that it "has standing as a secured creditor as evidenced by its allowed proof of claim." (Br. p. 4.) In *Zamora,* the objector's separate status as a creditor was

16

insufficient for standing because, whether or not abandonment was allowed, the objector's claim would be paid nothing. Therefore, the objector did not have the pecuniary interest that would be required to confer standing. Here too, whether or not the amendment is allowed, Freedom will be paid nothing more in this bankruptcy case. It has already received the full amount that was provided for it in the confirmed plan.

It should not be surprising that a creditor in a bankruptcy case does not automatically have standing. Even debtors do not always have standing if they lack a sufficient pecuniary interest. *See e.g., In re Koshkalda*, 622 B.R. 749, 764 n. 7 (9th Cir. B.A.P. 2020)("A debtor's standing to object to matters such as claims objections, allowance of fees, sales of property, and settlements generally depends upon having a pecuniary interest in the estate. Where the bankruptcy estate cannot pay all creditors in full and no surplus will be returned to the chapter 7 debtor, that debtor cannot generally demonstrate injury in fact to object to the trustee's administration of the estate and lacks standing.")

Thus, an entity's mere status as a participant in a bankruptcy case does not confer that entity with the standing to object to filings that do not affect it.

Finally, Freedom argues that it has standing because "Amendment Three concerns a claim against Freedom connected to its PPFN [Post Petition

17

Case 5:24-bk-01277-MJC    Doc 64    Filed 12/17/25    Entered 12/17/25 19:57:18    Desc
Main Document    Page 17 of 19

Fee Notice]." (Br. 2.) But the fact that the Companion Case has an indirect connection with the PPFN is not enough for standing. The Companion Case is only about whether Freedom has complied with its duties under RESPA and TILA. The Companion Case does not seek to litigate the PPFN, and no finding in the Companion Case would impact the PPFN. Debtor's right to prevail in the Companion Case is in no way tied to the reasonableness of the fees that are disclosed in the PPFN. Instead, the Companion Case is simply about whether Freedom complied with its duties to provide information under the statutes.[9]

## Conclusion

It appears that Freedom filed this objection only because it did not recognize that the claims being amended are different than the claims at issue in the Companion Case. When this point was made clear to Freedom at the hearing, it did not withdraw its objection. Instead, it doubled down in its

---

[9] Freedom also observes that "Debtor did not object to the PPFN to determine whether paying the fee was required, and the one (1) year period to contest the fee expired on October 21, 2025." It would have been imprudent for Debtor's counsel to file such an objection. As evidenced by Freedom's hardline defense here, the fees associated with litigating against the PPFN would almost certainly exceed the amount at issue. Because there is no fee-shifting for such litigation, it would be irresponsible to recommend to the Debtor that she authorize her counsel to pursue it. Instead, Debtor may eventually determine that she has a claim to schedule and to then litigate against Freedom under the Unfair Trade Practices and Consumer Protection Law, which provides for statutory damages and attorney's fees.

briefing and caused the accrual of substantial additional attorney's fees in response. However, Freedom has no standing to object here, and Freedom has identified no prejudice that it will suffer if the amendment is allowed. Its objection should be denied.

        Respectfully Submitted,

        s/ Carlo Sabatini
        Carlo Sabatini, PA 83831
        Attorney for Debtor
        Sabatini Law Firm, LLC
        216 N. Blakely St.
        Dunmore, PA 18512
        Phone (570) 341-9000
        Facsimile (570) 504-2769