| | | |
|---|---|---|
| In Re: | : | Case No. 5:24-bk-01277-MJC |
| | : | |
| Melissa Martin, | : | Chapter 13 |
| | : | |
| Debtor. | : | |
| | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

| | | |
|---|---|---|
| | : | |
| Freedom Mortgage Corporation, | : | |
| | : | |
| Objector, | : | |
| | : | |
| v. | : | |
| | : | |
| Melissa Martin, | : | |
| | : | |
| Respondent. | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## OPINION

Presently before the Court is Freedom Mortgage Corporation's ("Freedom") Objection to Debtor's Third Amendment to Schedule A/B ("Objection") on the grounds that Debtor's Third Amendment to her schedules ("Third Amendment") was filed in bad faith, is prejudicial to creditors and the Chapter 13 Trustee, and that the Amendment is barred by judicial estoppel. Melissa Martin ("Debtor") responded to the Objection to Debtor's Third Amendment ("Objection") and argues that Freedom does not have standing to object to the Third Amendment and even if Freedom had standing to object, the Third Amendment is permissible and should not be barred by judicial estoppel.

For the reasons stated below, the Court finds that Freedom has standing to object but overrules it's Objection to the Third Amendment.

## I.    PROCEDURAL POSTURE

All parties are familiar with the procedural history relating to this bankruptcy case and it requires no review herein.  On January 30, 2025, Debtor filed an Amendment to Schedule A/B ("First Amendment"), which disclosed a claim against Freedom for alleged violations of RESPA, TILA, and Regulation Z arising out of the bankruptcy servicing of the Debtor's mortgage on her residence. Doc. 32. On February 14, 2025, Debtor filed a Motion to Order Trustee to Abandon Property ("Motion to Abandon") regarding the claims against Freedom. Doc. 33.  The motion was unopposed and an Order Granting the Motion to Abandon was entered on March 6, 2026.  Doc. 34.

On June 18, 2025, Debtor filed another Amendment to Schedule A/B ("Second Amendment"). Doc. 38. On July 29, 2025, Debtor filed a Motion to Confirm Property is Abandoned with respect to the claims identified in the First and Second Amendments ("Motion to Confirm"). Doc. 43.  Freedom objected to the Motion to Confirm.  Doc. 47.  A hearing was held on September 4, 2025 and the Court denied the Motion to Confirm.  Doc. 53.  Also on September 4, 2025, Debtor filed the Third Amendment.  Doc. 51.  On October 2, 2025, Freedom objected to the Third Amendment. Doc. 54.  Debtor filed two briefs responding to Freedom's Objection.  Docs. 58, 59.  A hearing was held on November 4, 2025.  The parties filed post-hearing briefs. Docs. 62, 64. This matter is now ripe for disposition.

## II.    JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334 and the Standing Order of Reference of the U.S. District Court for the Middle District of Pennsylvania dated March 11, 2016. The pending matter is a core proceeding pursuant to 28 U.S.C. §§157(b)(2)(A).  Venue is proper pursuant to 28 U.S.C. §1409(a).

### III.   FACTS[1]

Debtor filed the instant Chapter 13 bankruptcy case on May 23, 2024.  Doc. 1.  The Debtor was in arrears on her mortgage payments to Freedom and wished to retain her residence.  Doc. 64, p. 3.  Debtor filed a Chapter 13 plan proposing to cure the mortgage arrears.  Doc. 5.   While the original Chapter 13 plan was not confirmed, Debtor was able to confirm the Second Amended Chapter 13 plan on September 20, 2024. Doc. 24, 27.

On July 29, 2024, Freedom filed Proof of Claim No. 15 ("Claim") indicating it is a secured creditor having a mortgage lien against Debtor's residence.  The claim indicated a balance due of $88,044.68, which included arrears of $17,663.56.  On October 21, 2024, Freedom filed a Notice of Post-Petition Fees, Expenses, and Charges Under Rule 3002.1 ("PPFN").  Claims Register, Doc. 15-1-doc.  Per the PPFN, Debtor was charged $400.00 to review the original Chapter 13 plan and an additional $800.00 for preparation of the Claim.  *Id*.  Upon receipt of the PPFN, Debtor sent a letter to Freedom requesting the time records to justify the fees under the Real Estate Settlement Procedures Act ("RESPA") and has alleged that such letter constituted a qualified written request ("First QWR") under 12 U.S.C. §2605(e)(1)(B).  Doc. 64, p. 4.  In addition to the First QWR regarding the fees, Debtor also requested a payoff statement pursuant to the Truth in Lending Act ("TILA") under 15 U.S.C. §1639g ("TILA Letter").  *Id* at 5.  Debtor contends that Freedom failed to timely provide the requested information.[2] *Id*.

On January 30, 2025, Debtor filed the First Amendment to add a post-petition claim rising out of the First QWR and TILA letter.  Doc. 32, Doc. 64, Exh. G.  The First Amendment stated as follows:

---

[1] This Memorandum constitutes findings of fact and conclusions of law made under Fed. R. Bankr. P. 7052, which is made applicable to this proceeding under Fed. R. Bankr. P. 9014.
[2] Freedom disputes that it failed to properly respond to these requests.  Audio of November 4, 2025 Hearing at 11:31 a.m.

ADD Claims against Freedom Mortgage Corporation and PS Bank for violations of RESPA, TILA, and Regulation Z. Debtor could recover statutory damages of up to $6,000.00, plus costs and attorney's fees.

Doc. 32. Following the First Amendment, Debtor filed the Motion to Abandon on February 14, 2025. Doc. 33. The Motion to Abandon stated that the Claim added to Schedule B by the First Amendment was of "inconsequential value" and that Debtor "does not" assert that she has a claim for any *actual* damages. Doc. 33, p. 1 (emphasis in original). There were no objections to the Motion to Abandon and the Court entered an Order Granting the Motion to Abandon ("Order"). The Order states specifically that "[t]he Chapter 13 Trustee is deemed to have abandoned the claims against Freedom Mortgage Corporation and PS Bank that are identified on the *Amended Schedules A/B filed to Dkt. Entry 32*." Doc. 34 (emphasis added).

On March 25, 2025, Debtor filed a state court action, *Melissa Martin v. Freedom Mortgage Corporation*, Case No. 25-cv-4073 ("Companion Case"), arising out of the claims in the First Amendment and abandoned by the Trustee. Doc. 64, p. 13, Exh. G.[3]

Debtor's Second Amendment was filed on June 18, 2025 and amends Schedule B as follows:

**ADD** *Additional claims arising after previous amendment* filed to Dkt. Entry 32 on January 30, 2025; Claims against Freedom Mortgage Corporation and PS Bank for violations of RESPA, TILA, and Regulation Z. Debtor could recover statutory damages of up to $6,000.00, plus costs and attorney's fees.

Doc. 38 (emphasis added). This Amendment notes that this relates to "additional claims arising after previous amendment." *Id*. Debtor represents that this claim arises out of Freedom's failure

---

[3] The Companion Case was later removed to the District Court for the Middle District of Pennsylvania at Case No. 3:25-cv-01254-MEM ("District Court Action") on July 10, 2025. Doc. 47, p. 2. The case has since been remanded back to State Court by Order of Judge Mannion entered on September 5, 2025. District Court Action, Doc. 20.

4

to respond to an alleged qualified written request dated March 20, 2025 ("Second QWR"). Doc. 64, p. 13. Exh. H.

On July 29, 2025, Debtor filed the Motion to Confirm. Doc. 43. The Motion sought to correct the claim as listed on the First Amendment. *Id*. Debtor claimed that the "description was imprecise and failed to consider the distinction between two types of attorney's fees." *Id*. ¶ 3. The Debtor goes on to explain that "defensive fees" are more properly characterized as "actual damages" and that the description in the First Amendment would suggest that the Debtor has no cause of action for the "defensive fees." *Id*. at ¶ 3-5. Freedom objected to the Motion to Confirm. Doc. 47. Freedom contended that the attempt by Debtor to recharacterize the claim to include "actual damages" after specifically representing to the Court that no "actual damages" were sought by Debtor was solely to overcome the Motion to Dismiss filed in the Companion Case. *Id*. at p. 2. Debtor claimed that Freedom lacked standing to object to the Motion to Confirm and that Debtor had not acted in bad faith and was merely clarifying the record. Docs. 58, 59. A hearing was held on September 4, 2025 and the Motion to Confirm was denied without prejudice.[4]

Immediately preceding the hearing held on September 4, 2025, Debtor filed the Third Amendment changing the Second Amendment as follows:

> **AMEND**: *This is an amendment to the asset disclosed in Dkt. Entry 38*; Additional claims arising after previous amendment filed to Dkt. Entry 32 on January 30, 2025; Claims against Freedom Mortgage Corporation and PS Bank for violations of RESPA, TILA, and Regulation Z. Debtor could recover statutory damages of up to $6,000.00, *actual damages*, costs, and attorney fees.

---

[4] The Court denied the Motion to Confirm without prejudice due to jurisdictional concerns. There were multiple Motions pending in the District Court Action regarding the First Amendment and the current characterization of the claim as set forth in the Motion to Abandon. The Court did not wish to further muddy the District Court's record while those motions were pending. The Court went on to advise that the Motion was being denied but Debtor was free to re-file the Motion once the District Court had ruled. Audio of September 4, 2025 Hearing at 11:18-11:19 A.M.

Doc. 51 (emphasis added). The Third Amendment adds "actual damages" language to the Second Amendment.

Debtor represents that the Third Amendment does not add any new claims but rather amends to add the "actual damages" language. Doc. 64, p. 2. Debtor asserts the "actual damages" language is being added for the same reason Debtor raised in the Motion to Confirm. Doc. 59, Doc. 43. Like in the First Amendment, Debtor's counsel alleges that he was unaware at the time of filing of the need to specifically characterize defensive attorney fees as "actual damages" for the purposes of litigating later qualified written requests under RESPA. Doc. 59, p. 3. The Third Amendment seeks to correct this error but, as in the First Amendment, this change does not provide any additional value to the bankruptcy estate. *Id*. at 4. Debtor emphasized that attorney fees had been on all prior schedules and Debtor never failed to include them, but rather failed to properly characterize them as potential "actual damages." *Id*. The change simply clarifies damages that *could* be pursued in a later RESPA action on the Second QWR. *Id*. There does not appear to be any pending litigation on the claims listed on the Second Amendment as amended by the Third Amendment.[5] Doc. 64, p. 2.

Freedom has objected to the Third Amendment for the same reasons it objected to the Motion to Confirm. Freedom asserts that the amended schedules were filed in bad faith, are prejudicial to creditors, and are designed to gain an upper hand in ongoing litigation.[6] Doc. 54.

---

[5] A careful review of the Complaint filed in the Companion Case, indicates that the Second QWR was included in the "Parties" portion of the Complaint at Line 26. Doc. 64, Exh. G. However, there was no claim for the Second QWR included in the Count section of the Complaint. *Id*. The only Count listed in the Complaint appears to relate only to the First QWR. *Id*.

[6] On December 12, 2025, the Debtor filed a Fourth Amendment to Schedule A/B ("Fourth Amendment") relative to a third qualified written request sent on November 6, 2025 ("Third QWR"). Doc. 63. There have been no objections to the Fourth Amendment and that amendment does not appear to be the subject of pending litigation.

## IV.  ANALYSIS

### A.  <u>Standing</u>

#### i.  Legal Standard

Bankruptcy standing is governed by both Article III of the U.S. Constitution and the Bankruptcy Code.  A party seeking Article III standing "must demonstrate an 'injury in fact' that is 'concrete', 'distinct and palpable', and 'actual or imminent.'" *In re Glob. Indus. Techs., Inc.,* 645 F.3d 201, 210 (3d Cir. 2011) (quoting *Whitmore v. Arkansas,* 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990)).  The party must further demonstrate that the injury "fairly can be traced to the challenged action and is likely to be redressed by a favorable decision." *Whitmore v. Arkansas,* 495 U.S. at 155.  This standard should be construed broadly and can be met so long as the party alleges a "specific, 'identifiable trifle' of injury." *Bowman v. Wilson*, 672 F.2d 1145, 1151 (3d Cir. 1982) (quoting *United States v. Students Challenging Regulatory Agency Procedures,* 412 U.S. 669, 686–90, 690 n. 14 (1973)).  The fundamental question is if the party has sufficiently "'alleged such a personal stake in the outcome of the controversy as to warrant *his* invocation of federal-court jurisdiction.'" *Horne v. Flores*, 557 U.S. 433, 445, 129 S. Ct. 2579, 2592, 174 L.Ed.2d 406 (2009) (quoting *Summers v. Earth Island Institute,* 555 U.S. 488, 491 – 494, 129 S.Ct. 1142, 1148–49, 173 L.Ed.2d 1 (2009)  (internal quotation marks omitted)).

Standing under the Bankruptcy Code is "effectively co-extensive" with Article III standing. *In Re Global*, 645 F. 3d at 211.  The Bankruptcy Code addresses standing in both 11 U.S.C. §§ 502(a) and 1109(b),[7] specifically providing for standing for a "party in interest" with regard to

---

[7] Unless otherwise noted, all further statutory references are to the Bankruptcy Code, 11 U.S.C. §101, *et seq.*, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

proofs of claim and Chapter 11 confirmation matters.[8]  The Third Circuit defined a "party in interest" as "'anyone who has a legally protected interest that could be affected by a bankruptcy proceeding.'" *In Re Global*, 645 F. 3d at 210 (quoting *In re James Wilson Associates,* 965 F.2d 160, 169 (7th Cir. 1992)).  Seemingly taking this standard a step further, the Court in *In Re Freeman* found that standing required that "a party must have a 'pecuniary interest' in the outcome of the dispute."  *In Re Freeman*, 540 B.R. 129, 134 (Bankr. E.D. Pa. 2015) (citing *In re Kaiser,* 525 B.R. 697, 705 (Bankr. N.D. Ill. 2014); *In re Bozman,* 403 B.R. 494, 496 (Bankr. S.D. Ohio 2006); *In re Manshul Constr. Corp.,* 223 B.R. 428 (Bankr. S.D.N.Y. 1998)). Paralleling Article III, "party in interest" standing within the bankruptcy context should be applied broadly.  *In Re Global*, 645 F. 3d at 211.

While the Third Circuit has held that party in interest standing should be applied broadly, this standard is not without its limitations.  For instance, standing based *solely* on a party being a defendant in an adversary proceeding or state court proceeding is insufficient to rise to standing in a bankruptcy case. *See In Re Zamora*, 2016 W.L. 617194, at \*1 (Bankr. N.D. Cal. 2016). Additionally, "pecuniary interest" has been interpreted to require that the party seeking standing must have a stake in the distribution of assets amongst creditors.  *In re Aronson*, 1994 WL 497541, at \*6 (E.D. Pa. Sept. 12, 1994); *In re Gurst,* 76 B.R. 985, 988 (Bankr. E.D. Pa.1987). Despite the limitations placed upon bankruptcy standing, the Supreme Court recently held that where there will be the potential for financial harm or there is "financial responsibility for bankruptcy claims" the liable party is a party in interest for the purposes of bankruptcy standing under Section 1109.

---

[8] The Bankruptcy Court for the Eastern District of Pennsylvania addressed that while Section 1109 of the Bankruptcy Code was not directly applicable to a Chapter 13 case, it "provides guidance in understanding who Congress meant to encompass within the phrase 'party in interest.'"  *In re Jensen*, 369 B.R. 210, 229 (Bankr. E.D. Pa. 2007).

*Truck Ins. Exch. v. Kaiser Gypsum Co., Inc.*, 602 U.S. 268, 285, 144 S. Ct. 1414, 1428, 219 L.Ed.2d 41 (2024)

### ii.  Freedom has Standing to Object to Amended Schedules

The Court finds that Freedom has standing to object to the Third Amendment.  Party in interest standing in a bankruptcy case requires that Freedom have a personal stake in the outcome of this matter.  Additionally, Freedom would also need to have a "pecuniary interest" in the outcome of this proceeding.   Freedom is a creditor in this case with a filed claim that was subject to no objections.  Further, the RESPA and TILA claims Debtor wishes to pursue in litigation outside the bankruptcy arise from the PPFN filed in this bankruptcy case and those claims are now being supplemented by the Third Amendment.

The Court finds that Freedom has both a personal stake and a pecuniary interest relating to the Third Amendment.  The RESPA and TILA claims arise from a dispute over attorney fees disclosed on the PPFN filed in the bankruptcy case on October 2, 2024.  These claims would not exist but for the bankruptcy case.  Further, in order for the Debtor to pursue any claim arising out of the PPFN, that claim must be added to the schedules on notice per Fed. R. Bankr. P. 1009(a). *Thomas v. JP Morgan Chase, N.A.*, 2012 WL 2872164, at *7 (E.D.N.Y. 2012) (citing *Sea Trade Co. v. FleetBoston Fin. Corp.,* 2008 WL 4129620, at *5 (S.D.N.Y. 2008)); *Moses v. Howard Univ. Hosp .,* 606 F.3d 789, 798 (D.C. Cir. 2010) ("[E]very circuit that has addressed the issue has found that judicial estoppel is justified to bar a debtor from pursuing a cause of action in district court where that debtor deliberately fails to disclose the pending suit in a bankruptcy case.").

Debtor argues that Freedom has no pecuniary interest in this case because its claim for mortgage arrears has been paid in full and as such it no longer has an interest in the assets or distributions by the Chapter 13 Trustee.  The sole source of standing in this case isn't that Freedom

is a creditor, paid or otherwise. Debtor's argument that being a fully paid creditor robs Freedom of bankruptcy standing cannot be reconciled with the fact that Freedom will bear the financial responsibility for any award issued in future litigation arising from the Second QWR that is now the subject of the Third Amendment.

Freedom has more than an "identifiable trifle" of an injury in this case and their legally protected interest could be affected by the Third Amendment. As such, this Court finds that Freedom has standing to object to the Third Amendment.

**B.     Judicial Estoppel**

**i.     Legal Standard**

The purpose of judicial estoppel is "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine,* 532 U.S. 742, 743 (2001). Judicial estoppel applies when:

> First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled…A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*U.S. v. Pelullo*, 399 F.3d 197, 222-223 (3d Cir. 2005) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750-751, 121 S.Ct. 1808 (2001)(internal quotations and citations omitted)).

While judicial estoppel may be raised to protect the integrity of the court and to ensure that a party is not permitted to gain an advantage in litigation by changing their position, "judicial estoppel is…not intended to eliminate all inconsistencies no matter how slight or inadvertent they may be." *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 319

(3d Cir. 2003) (citing *In re Chambers Development Co., Inc.,* 148 F.3d 214 (3d Cir.1998)). The Third Circuit has found in order to justify the application of judicial estoppel a party must show that, not only were the positions "irreconcilably inconsistent" but also required a showing of "'bad faith - i.e., intent to play fast and loose with the court.'" *Montrose Medical Group Participating Savings Plan v. Bulger*, 243 F.3d 773, 779-780 (3d Cir. 2001) (quoting *Ryan Operations G.P. v. Santiam–Midwest Lumber Co.,* 81 F.3d 355, 361 (3d Cir.1996)).

### ii. Judicial Estoppel is not Applicable.

Here, Freedom alleges that the Third Amendment is a tactic to gain an advantage in the Companion Case and that Debtor's position that "actual damages" may be available to her is a change in position that merits the application of judicial estoppel. This Court does not agree.

Debtor is amending the language of the Second Amendment to include "actual damages" as a possible claim in future litigation regarding claims arising after January 30, 2025. Debtor is amending her schedules to properly list potential claims based upon subsequent conduct, not attempting to gain an advantage to ongoing litigation. It is not playing "fast and loose" or "irreconcilably inconsistent" to amend schedules to accurately list all claims of the Debtor. In fact, Debtor is obligated to correct any inaccurate schedules. *See In Re Engel*, 246 B.R. 784, 794 (Bankr. M.D. Pa. 2000). Importantly, Debtor never failed to list the claim for attorney fees. In the Second Amendment, Debtor listed attorney fees as a possible award in any future litigation. Doc. 38. The addition of "actual damages" in the Third Amendment, which Debtor has indicated may include defensive attorney fees, may change the characterization of part of the award but not the underlying award itself. Doc. 51. At all times, Debtor disclosed that attorney fees were a part of any potential award in the underlying cause of action. Docs. 32, 38, 51.

Freedom's argument for applying judicial estoppel is framed within a misunderstanding of the claims being amended by the Third Amendment.[9] Freedom interpreted the Third Amendment to be reaching back to add "actual damages" language to claims arising prior to January 30, 2025. Claims arising before January 30, 2025 and added by the First Amendment *could* be subject to judicial estoppel as there has been reliance by the Trustee, the Court, and the Creditors on the representations in the First Amendment. However, the First Amendment is not the subject of this action. The allowance of the Third Amendment is before this Court. The claims arising after January 30, 2025 are not part of the asset added by the First Amendment, do not appear to arise out of claims that are subject to the litigation in the Companion Case, and were not abandoned by the Chapter 13 Trustee pursuant to Order of this Court on the Debtor's Motion to Abandon. Doc. 34.

Freedom has not demonstrated any prong of the test for applying judicial estoppel. The Debtor's Third Amendment is not inconsistent with her prior schedules, nor has any Court granted relief or relied upon the prior position such that Debtor would be provided with an unfair advantage in any ongoing litigation.

In as much as Freedom has failed to meet its burden, the request to bar the Third Amendment by judicial estoppel is hereby denied.

---

[9] The Court notes the Amendments as filed by Debtor create confusion as to precisely where claims are being added, amended, or unaltered. The resulting confusion caused by the Debtor has made the underlying facts in this matter difficult to parse.

### C.    The Third Amendment

#### i.    Legal Standard

Fed R. Bankr. P. 1009(a) permits the debtor to amend schedules "at any time before the case is closed."[10] Fed. R. Bankr. P. 1009(a).  Due to the permissive nature of this rule, an objector must demonstrate that the debtor has acted in bad faith or the acceptance of the amended schedules would be prejudicial to creditors or the Trustee.  *In Re Cudeyero*, 213 B.R. 910, 917 (Bankr. E.D. Pa. 1997); s*ee In re Nesser,* 206 B.R. 372, 374 (Bankr. W.D. Pa. 1997) ("Leave to amend exemptions generally is denied only if the debtor has acted in bad faith, concealed assets, or if the amendment would prejudice creditors"); *In re Lockovich,* 150 B.R. 989, 990 (Bankr. W.D. Pa. 1993) ("Generally, schedules 'may be amended by the debtor as a matter of course at any time before the case is closed.'.... An amendment may be denied, however, if there is bad faith by the debtor or prejudice to creditors").

A mere allegation of bad faith is insufficient.  *In re Magallanes*, 96 B.R. 253, 256 (B.A.P. 9th Cir. 1988) (citing *In re Brown,* 56 B.R. 954, 958 (Bankr. E.D. Mich. 1986)).  Bad faith must be shown by clear and convincing evidence. *Id*.  This standard allows the "the party alleging bad faith an opportunity to prove his or her claim, but also implements the policy of liberally allowing the debtors to amend their exemption claims in order to enhance their fresh start."  *Id*.  While bad faith contains no specific definition, one of the clearest examples of bad faith is an attempt to conceal an asset. *In Re Cudeyero*, 213 B.R. at 918; *see Hardage v. Herring Nat. Bank,* 837 F.2d 1319, 1324 (5th Cir.1988); *Matter of Doan,* 672 F.2d 831, 833 (11th Cir. 1982) ("concealment of

---

[10] Not only does Rule 1009(a) permit the debtor to amend schedules prior to case closure, but the Debtor has an obligation to file accurate schedules and an ongoing duty to correct any errors in those schedules. *In Re Engel*, 246 B.R. at 794. "Even if the asset is not ultimately determined to be property of the estate under the technical rules of the Federal Bankruptcy Code, Section 152 properly imposes sanctions on those who preempt a court's determination by failing to report the asset." *United States v. Cherek*, 734 F. 2d 1248, 1254 (7th Cir. 1984).

an asset will bar exemption of that asset"); *see also Payne v. Wood,* 775 F.2d 202, 205 (7th Cir. 1985) (permission to amend exemptions "most unlikely" to be permitted, where debtors apparently had attempted to conceal assets).

Prejudice carries clearer boundaries. The Court in *In re St. Hill* stated:

> Thus, prejudice may arise, for example, where a trustee has engaged in efforts to sell certain property…That is, in those instances the trustee may be understood to have acted in reliance upon the debtor's initial schedules, and having taken such actions may be prejudiced if the amendments were allowed.

*In Re St. Hill*, 2005 WL 6522764, at *11 (Bankr. E.D. Pa. 2005) (citing *Matter of Eldridge*, 15 B.R. 594, 595 (Bankr. S.D.N.Y. 1981) (debtors attempted to change exemptions after trustee had contracted to sell the subject property)); *see also In re Santoro,* 3 B.R. 210, 212 (Bankr. E.D.N.Y. 1980) (debtors attempted to claim exemptions after the trustee had sold subject property); *Hardage v. Herring Nat. Bank,* 837 F.2d at 1324 (prejudice may occur if creditors have detrimentally relied upon the debtor's original exemption claim). Prejudice is also found where debtors attempt to amend after having sought relief from the court based on the representations made in prior schedules.[11] *Id.*; *see also In re Shaffer,* 92 B.R. 632 (Bankr. E.D. Pa. 1988) (objection to debtors' amended exemption claim is sustained when debtors sought to amend after the trustee liquidated the asset and made distribution to creditors).

### ii. Debtor's Third Amendment to Schedules A/B is Allowed.

The Court does not find that there is bad faith or prejudice in the filing of the Third Amendment. Freedom's objection to the Third Amendment seems rooted in a lack of understanding as to what asset on Schedule B is being amended by the Third Amendment.

---

[11] An additional ground for finding prejudice in amending schedules is undue delay however this has not been raised by either party in the instant case. *In Re St. Hill*, 2005 WL 6522764, at *11.

14

On its face, Debtor appears to be amending a single cause of action for a second time in order to preserve a cognizable claim against Freedom in litigation outside this Court. However, upon closer inspection that is not the case. In her Third Amendment, Debtor is amending the Second Amendment by adding "additional claims arising after the previous amendment." Doc. 51. The Second Amendment was derived from the Second QWR sent to Freedom on March 20, 2025. Docs. 38, Doc. 64, p. 13. This potential cause of action was added to Debtor's schedules by the Second Amendment filed on June 18, 2025. Doc. 38. The Third Amendment is adding "additional claims" incurred after January 30, 2025 and has added the "actual damages" language. Doc. 51. Most relevant to this Court's review is that this is not an amendment to the cause of action added by the First Amendment filed on January 30, 2025. Doc. 32.

The fact that the Third Amendment is amending additional claims arising out of the Second QWR is critical to the analysis of whether this amendment rises to bad faith or prejudice sufficient to warrant a denial by this Court. Here, the sole basis of the bad faith argument by Freedom is that the Debtor is attempting to amend schedules in order to gain an advantage in ongoing litigation. Freedom claims that this amendment is prejudicial to creditors and the Trustee due to the reliance of creditors on the representations of the Debtor in the Motion to Abandon.[12] The flaw in this argument is that the claim being amended in the Third Amendment does not appear to be subject

---

[12] Freedom raised valid concerns regarding clarity in the Amended Schedules and how any Order by this Court could be interpreted by other Courts. Hearing of November 4, 2025 at 11:12 A.M. This Court agrees that precision is necessary in this matter. The Court's finding here should not be construed as permitting any amendment to the First Amendment docketed at Doc. 32. The Court denied the attempt to change the language in the First Amendment by the Order Denying Motion to Confirm Property as Abandoned entered on September 5, 2025. Doc. 53. At this time the Motion to Confirm has not been re-filed by the Debtor and the language describing the claims against Freedom Mortgage and PS Bank remains unchanged and does not include any specific "actual damages" language. The only amendment being permitted by this Order is the Amendment of the *additional* claims incurred after January 30, 2025 and arising out of the QWR sent on March 20, 2025 which was added by Doc. 38 and amended by the Third Amendment. Doc. 51.

of litigation in the Companion Case or the Motion to Abandon. Both of those matters arise out of the First Amendment and the First QWR issued on October 29, 2024.[13] There does not appear to be any reliance by either the Trustee, creditors, or the Court on Debtor's prior representations in the Second Amendment. There has been no relief granted by any Court that relied on Debtor's representations in the Second Amendment. Accordingly, there is no clear and convincing evidence of bad faith and neither the Trustee or creditors have been prejudiced by the filing of the Third Amendment.[14]

Accordingly, Freedom's Objection to the Third Amended Schedules is overruled.

## V.      CONCLUSION

While the Court finds that Freedom has standing to object to the Third Amendment, Freedom has not demonstrated sufficient cause for this Court to estop the Debtor from amending the Second Amendment and has failed to meet its burden to demonstrate bad faith or prejudice.

For all the reasons stated, the Objection is **OVERRULED**.

An Order consistent with this Opinion shall be entered.

By the Court,

_____
Mark J. Conway, Bankruptcy Judge
Dated: April 29, 2026

---

[13] The Order on the Motion to Abandon specifically states that it is applicable to the First Amendment at Doc. 32. Additionally, the Motion to Confirm makes no mention of any modification to later amended schedules and references only the First Amendment. *See* Doc. 43. To date, the Debtor has not sought the abandonment of the asset listed in the Second Amendment and as amended by the Third Amendment.

[14] The Chapter 13 Trustee has not objected to any of the Amended Schedules or Motions related thereto in this case.

Case 5:24-bk-01277-MJC    Doc 66    Filed 04/29/26    Entered 04/29/26 12:26:49    Desc
Main Document      Page 16 of 16